GARY L. MORGAN *v.* JUDY RENEER ET AL.

[No. 1069A182. Filed November 30, 1970. Rehearing denied January 13, 1971. Transfer denied May 27, 1971.]

*Paul B. Ledford, Hart, Ledford & Bell,* of Vincennes, for appellant.

*Sydney L. Berger, Joe S. Hatfield, Fine, Hatfield, Sparrenberger & Fine,* of Evansville, for appellees.

PER CURIAM.—This matter is before us on the Motion of the Appellee Robert E. Hunt to Dismiss the Appeal or in the Alternative to Affirm the Judgment Below as to him.

This appeal is from the Vanderburgh Circuit Court, wherein Judy Reneer, by her father and next friend, brought an action against the appellant Gary L. Morgan and the appellee Robert E. Hunt for damages for personal injuries arising out of an automobile accident. Trial was had to a jury, which returned a verdict for the plaintiff, Judy Reneer, against the defendant, Gary L. Morgan, and for the defendant-appellee, Robert E. Hunt. Judgment was entered accordingly.

The motion of the appellee Robert E. Hunt to dismiss appeal or affirm the judgment as to him reads in pertinent parts as follows:

"5. That the jury returned a verdict in favor of this petitioner, Robert E. Hunt, Appellee-defendant and that no verdict was returned against this petitioner.

"6. That no motion for new trial was filed by Judy Reneer, Appellee-plaintiff below, and no motion for new trial was filed by Appellant-defendant below, as against this petitioner Appellee-defendant below.

"7. That this Appellee-defendant, Robert E. Hunt, is not a co-party to the judgment rendered against Appellant-defendant, Gary L. Morgan.

"8. That this Appellee-defendant, Robert E. Hunt, is neither a proper nor a necessary party to this appeal.

"9. That Appellant-defendant, Gary L. Morgan, cannot complain that no verdict was rendered against this Appellee-defendant, Robert E. Hunt, who was sued as a joint tortfeasor.

"10. That this Appellee-defendant, Robert E. Hunt, has no interest in the judgment appealed from.

"11. That the entire cause and all issues as between Appellee-plaintiff, Judy Reneer, and Appellee-defendant, Robert E. Hunt, were disposed of in the trial Court.

"12. That the judgment was final as to Appellee-defendant, Robert E. Hunt.

"13. That there were no issues between Appellant-defendant, Gary L. Morgan, and Appellee-defendant, Robert E. Hunt, which could result in a judgment for or against each other.

"14. That Appellant's brief raises no question or questions as to this Appellee-defendant, Robert E. Hunt. Appellant's brief raises only the questions of the evidence bearing upon the alleged wilful and wanton misconduct of Appellant-defendant, Gary L. Morgan, and the asserted error of the trial Court in refusing to give Appellant Morgan's various motions for directed verdicts and to withdraw issues as to Appellant-defendant, Gary L. Morgan, and asserts no error as to Appellee-defendant, Robert E. Hunt."

In the case of *Carita Merriman* v. *Marion H. Kraft and Firestone Tire and Rubber Company* (1968), 143 Ind. App. 256, 239 N. E. 2d 609, this Court, in considering a motion to dismiss premised on the same basis as the one now before us, stated:

"We believe the rule of law, applicable to this motion, is succinctly stated in the case of *Smith* v. *Graves* (1915), 59 Ind. App. 55, 58, 59, 108 N. E. 168; followed by this court as late as 1963 in *Weiand* v. *Russow* (1963), 134 Ind. App. 625, 190 N. E. 2d 567; as being:

'When several persons are defendants and the jury finds for part and against part of such defendants, on appeal by the defendants against whom judgment was rendered, the defendants who obtained a verdict and judgment in their favor are neither necessary nor proper parties to the appeal. *Town of Windfall City* v. *First Nat. Bank* (1909), 172 Ind. 679-686, 87 N. E. 984, 89 N. E. 311; *Southern R. Co.* v. *Elliott* (1908), 170 Ind. 273-276, 82 N. E. 1051; *Hubbard* v. *Burnet-Lewis Lumber Co.* (1912), 51 Ind. App. 97-99, 98 N. E. 1011.'

"Based upon the preceding authorities and the reasoning in *City of Indianapolis* v. *Bates* (1963), 134 Ind. App. 343,

188 N. E. 2d 114, we conclude that the appellee, Firestone Tire and Rubber, is neither a necessary nor proper party to this appeal."

We have examined the motion for new trial filed herein and none of its specifications predicate error on the conduct of the appellee Robert E. Hunt. We are therefore of the opinion that the appellant herein will not be prejudiced by the sustaining of the appellee Robert E. Hunt's said motion.

The Motion of the Appellee Robert E. Hunt is therefore sustained and this appeal is dismissed as to him.

NOTE.—Reported in 259 N. E. 2d 438.

LOWDERMILK, C.J.—This is an action brought under the guest statute by plaintiff-appellee by her next friend against defendant-appellee Robert E. Hunt and defendant-appellant Gary L. Morgan for damages for personal injuries sustained by plaintiff-appellee as the result of a collision of an automobile in which plaintiff-appellee was a guest passenger and which was driven by the defendant-appellant Gary L. Morgan, which car collided head-on with an automobile operated by defendant-appellee Hunt, as Hunt approached the crest of a levee and at a time after appellant Morgan had crossed over the levee and was proceeding down the other side. Trial was by jury, which returned a verdict for appellee in the amount of $65,000 against appellant Morgan, and which returned its verdict for the defendant-appellee Robert E. Hunt. Robert E. Hunt is not a party to this appeal.

At the conclusion of plaintiff-appellee's evidence the defendant-appellant filed written motion for an instruction directing a verdict for the appellant, which motion was by the court overruled. Appellant then filed his written motion for instructions numbered A-1 to A-5, both inclusive, withdrawing from the jury's consideration each of the acts of wanton and reckless conduct alleged in rhetorical paragraph 9 of appellee's third amended complaint. The court overruled the motion of

appellant and refused to give instructions numbered A-1 to A-5.

Appellant introduced his evidence, after which he filed his motion for a directed verdict, together with tendered Instruction No. B, which motion was overruled by the court. Appellant then filed written motion for Instructions B-1 to B-4, both inclusive, withdrawing from the jury's consideration the acts of wanton misconduct alleged in paragraph 9 of appellee's third amended complaint, which motion was by the court overruled and the tendered instructions refused.

Appellant timely filed his motion for a new trial, the grounds of which are as follows:

1. The verdict of the jury is not sustained by sufficient evidence;
2. The verdict of the jury is contrary to law;
3. Errors of law occurring at the trial, each separately and severally,

which errors are set out and are that the court erred in overruling the motion for the directed verdict at the close of plaintiff-appellee's evidence and at the close of all the evidence and the court erred in refusing to give to the jury instructions tendered at the close of plaintiff-appellee's evidence and at the close of all the evidence to withdraw certain issues from the consideration of the jury.

Appellant's sole assignment of error is that the court erred in overruling appellant's motion for a new trial.

Under the record before us, the action of the trial court was proper only if all the evidence favorable to the appellee and all the inferences which might reasonably have been drawn therefrom were sufficient to establish wanton misconduct on the part of the appellant Morgan. *Clouse, etc.* v. *Peden* (1962), 243 Ind. 390, 186 N. E. 2d 1.

The Indiana guest statute (Burns' Ind. Stat. § 47-1021), with which we are here concerned, reads as follows:

"Guest of owner or operator—Right to damages.—The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

On December 4, 1966, appellee was riding in the right front seat of a Mustang automobile operated by the appellant, with another young couple in the rear seat, for about two hours in and around the vicinity of Owensville, Indiana.

Our mathematical calculation, after a search of the transcript, leads us to believe that, at this time, appellant was about 17½ years of age. The appellee was 16 years, or over, and still in high school.

The cruising speed during this time was estimated by the witness Judith Ann Cummings, who was riding in the rear seat, to be something less than 40 miles per hour, which she says is her best guess.

Appellant was driving on Road 1500 West, which runs in a north-south direction and was a gravel road in the vicinity of Owensville, Indiana, which has three lanes made from tire tracks. One lane is in the center, and another lane on either side of the center lane, with loose gravel between the three lanes. As the road approached the levee, and at the approach to the levee, the lanes faded out and the road over the levee was a flat gravel surface, 21 feet in width. The top of the levee is a flat surface of about 10 feet in width in a north-south direction. The record is silent as to the exact height of the levee, but the levee is of sufficient height that one approaching the same cannot see over it and a car must be completely on the flat top of the levee and approaching the opposite side before persons in an automobile coming upon the levee approach from an opposite direction see the automobile.

There is a gravel road running many miles either direction from Road 1500 West on the top of the levee. There are also roads similar to Road 1500 West which cross the levee at divers points. All roads crossing the levee are, for the most part, of the same design and material.

Appellant, by his own evidence, stated that he approached said levee driving between 30 and 40 miles per hour. At some point on the highway, prior to the collision, appellee told appellant "Wouldn't it be awful or terrible if a car was coming up the other side."

Appellant's evidence was that he continued up the middle of the traveled portion of the road and across the levee at a speed of 25 to 30 miles per hour and was traveling about 30 miles per hour when he crested the far side. Appellant was the only witness who testified that while appellant was crossing the flat top portion of the levee, in order to avoid large rocks in the highway which were in the path of his left wheels, he abruptly cut his car to the left and did not see the approaching car of appellee, Hunt, until after he had so swerved his car and cut it to the left. At the time appellant cut his car to the left its back end whipped to the right and he immediately continued forward on the left half of the traveled portion of the highway, colliding head on with Mr. Hunt's Mustang automobile, the cars striking each other with right front against right front. After appellant observed the Hunt vehicle he is of the opinion he hit his brakes and that was what caused his car to skid to the left. There is no evidence that we can find in the record that appellant did actually apply his brakes before the collision. At the time he saw Hunt's vehicle he was over the crest of the levee and was going down the side on which Mr. Hunt was approaching.

Appellee, Hunt, an eye witness, put appellant's speed as he topped the levee at 50 miles per hour and placed appellant's car in the center of the road at that time. Appellant could not see oncoming traffic until he was across the top of the levee,

and at which time the road and vehicles approaching thereon became visible to him, if he were keeping a lookout ahead.

The photographs admitted into evidence and exhibited to the jury were mute evidence of the speed of appellant's car and the extent of damage to the respective vehicles was evidence as to the speed of appellant's automobile and also evidence of appellant's failing to keep a reasonable lookout and failing to have his automobile under reasonable control. Such evidence and the inferences that a jury might legitimately draw therefrom are proper matters for the jury to consider in determining the acts of wanton conduct as charged in appellee's complaint.

Our Supreme Court, in *Samuel-Hawkins Music Co., Inc.* v. *Ashby* (1965), 246 Ind. 309, 205 N. E. 2d 679, said:

> ". . . There was also much photographic evidence by both parties showing the scene as it existed and vividly demonstrating the view each driver had at the time. The collision occurred in broad daylight at 2:30 in the afternoon. The jury unquestionably under this evidence was properly permitted to consider the question of negligence on the part of appellant truck driver in failing to keep a lookout. *Lookout as well as speed, under the authorities, may be established by proof of physical facts and circumstances.* 3 I.L.E., Automobiles, § 115, p. 467." (Our emphasis.)

In *Gary Fish Co.* v. *Leisure* (1952), 122 Ind. App. 190, 102 N. E. 2d 209, Transfer denied February 27, 1952, the court said:

> ". . . The extent of the damage to the Kacena car was evidence of the speed of appellant's truck. The photograph was germaine as to both of these circumstances and issues and was, therefore, admissible."

Also, see *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734.

In our opinion, the physical damage to the automobiles, as displayed by the exhibits, was severe enough that the jury

could reasonably infer the collision took place with one or both cars traveling at a high rate of speed.

Where the evidence is conflicting, in determining whether a finding in favor of appellee is warranted, only the uncontroverted facts and the evidence most favorable to appellee and the favorable inferences that may be drawn therefrom can be considered on appeal. *Pontious* v. *Littleton* (1970), 146 Ind. App. 369, 255 N. E. 2d 684.

Appellant had knowledge, prior to his wreck, that there had been several close mishaps and an occasional fender scraping on certain roads crossing the levee, but so far as he knew, there had been no wrecks at the particular point where the collision in question occurred. Appellant knew that near Crowdersville there had been a couple of minor mishaps between cars crossing the same levee.

Appellee was critically injured and sustained irreparable brain damage, which lowered her intelligence quotient from 103 to 76, and she did not remember anything about the collision.

Appellant has grouped together and supported by one argument the three specifications of his motion for a new trial. We shall here treat all three specifications together.

Appellant contends that he was not guilty of wanton misconduct. He further contends the burden was on the appellee to show by a preponderance of the evidence that he, appellant, was conscious of his conduct and, with knowledge of existing conditions that injury would probably result, he consciously and intentionally did some wrongful act or omitted some duty which produced the injury. He cited from *Brown* v. *Saucerman* (1957), 237 Ind. 598, 145 N. E. 2d 898, wherein the court held:

". . . to be guilty of wanton misconduct within the meaning of the statute (§ 47-1021, *supra*), the driver must (1) be conscious of his misconduct, (2) be motivated by a desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of

his guests, and (3) he must do so knowing that his conduct subjects them to a high probability of injury."

Further appellant states that the other feature of "guest cases" that is quite frequently discussed by the courts is the course of conduct of the host driver up to and preceding the occurrence itself (citing cases). It is the court's responsibility to apply the law to the facts of each case as the court finds the facts to exist. We have adhered to this rule in arriving at our conclusion herein.

Judge Sharp of this court, in *Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 2d 535, 543, Transfer denied September 29, 1970, discussed the theory of the guest case and the essential elements necessary to make the driver of a motor vehicle guilty of wilful or wanton conduct, as set out in *Brown* v. *Saucerman, supra.* In the *Brueckner* case, the court said:

"In the present case there is a total lack of evidence as to any mental attitude on the part of the driver which was adverse to the welfare of the guest or which might be considered as a 'perverse motive' in that the misconduct was conscious. and intentional, and that the driver under the known circumstances knew that injury would probably result therefrom."

Judge Sharp further distinguished that case from *Clouse* v. *Peden, supra,* holding that the facts were dissimilar in the two cases.

Judge Sullivan of this court also discussed the elements necessary under the guest law to make the host driver responsible for injuries to his guests in *Mazza* v. *Kelly* (1970), 147 Ind. App. 33, 258 N. E. 2d 171, 173, and in that case he distinguished it from *Brueckner* v. *Jones, supra:*

"The rule has been stated by our courts as follows:
" 'Willful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or ommission [sic] of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result.'

*Becker* v. *Strater,* 1947, 117 Ind. App. 504, 506, 72 N. E. 2d 580, 581. See also: *Bedwell* v. *DeBolt,* 1943, 221 Ind. 600, 50 N. E. 2d 875."

In *Clouse* v. *Peden, supra,* the court quoted from *Brown* v. *Saucerman, supra,* the acts of a driver which are necessary to make him guilty of *wanton* misconduct. This quotation was followed by a statement by the court that in *Clouse* there was no question but that the appellee was conscious of his misconduct and the requisite knowledge was known to exist and it was orally conveyed to the driver by his guest. In *Clouse* appellee contended that there was no proof of the probability of injury resulting from appellee's conduct. He contended that under the evidence most favorable to the appellant injury was not only improbable, it was extremely remote. This contention was supported by argument that even though appellee entered the intersection of a country road at an excessive speed it was not probable that vehicles would be traveling upon the intersecting highway more than every fifteen minutes and that it would require the appellee about one second to cross the intersection and that, therefore, the ratio of the probability of a collision with other traffic would be only one in nine hundred.

The court said:

"However, we cannot limit the application of the guest statute [§ 47-1021, *supra*] to those circumstances where collision and injury are, in fact, more probable than improbable. Rather, the term 'probably injury,' as used in the cases defining wanton or wilful misconduct, must be considered to have reference to situations where there is a very real and present likelihood of injury under circumstances where the misconduct of the operator of the vehicle would be the proximate cause of the injury.

"Appellee also contends that, even though there was a probability of injury as a result of the manner in which appellee drove his automobile, he was not aware of such probability and, therefore, his misconduct cannot be characterized as 'wanton or wilful.' Appellee asserts that this lack of awareness is conclusively demonstrated by his declarations that there would be no one upon the intersecting roadway at the particular time of day. However, the jury

was not bound to accept appellee's statements as speaking the truth in this regard. *It was reasonable for appellee to anticipate the normal flow of traffic upon the road and he did not and could not know whether or not traffic was approaching from the right, since the road to the north was obscured by a cornfield.* Furthermore, the jury might reasonably have considered that the statement was merely an additional manifestation of arrogant recklessness on the part of appellee as to the rights and feelings of the appellant who was pleading with appellee to slow down."

The court then quoted from *Brown* v. *Saucerman, supra,* as follows:

" 'The question as to whether the accident was caused by the wanton or willful misconduct of the defendant should be left to the jury in all cases where there is any conflict in the evidence or where different inferences from the testimony given [regarding the essential facts] might be reasonably drawn. . . .' *Pierce* v. *Clemens, supra* (113 Ind. App. 65, 46 N. E. 2d 836)."

The court then held that the evidence in the *Clouse* case was sufficient to present an issue of wanton misconduct to the jury; and that a peremptory instruction at the conclusion of the appellant's evidence that the jury return a verdict for the defendant was error.

There is a similarity of facts in the case at bar and those in *Clouse.* In *Clouse* the hazard warned of by the guest was the excessive speed on a loose gravel road approaching an intersecting road and on which oncoming traffic was obscured. In the case at bar appellant had been warned of the peril of meeting an oncoming motor vehicle and colliding therewith on the road over the levee by appellee's stating to him "Wouldn't it be awful or terrible if a car was coming up the other side," at some point on the trip. Yet, considering only the evidence most favorable to the appellee the appellant continued to drive his Mustang automobile over the levee at a speed testified to as being 50 miles per hour and to the left of the center of the highway, and without keeping a lookout ahead of him. The

jury had the right to infer that this warning was given as appellant approached the levee, as the remark would not have been appropriate at any place other than on the said approach.

Applying the necessary elements which constitute misconduct within the meaning of the statute, as set out in this opinion, we are of the opinion that appellant was (1) conscious of his misconduct for the following reasons.

Appellee warned him of the danger if another car was coming over the levee; appellant also had knowledge of the danger and the risk incurred in crossing the levee from his having driven the length thereof on the road on its top and his having traversed the levee on the highway in question and on divers highways which cross the levee and his having knowledge of some fender bumps with cars meeting and colliding on top of the levee on divers roads crossing it; appellant knew he was traveling upon a public highway and there was a possibility or likelihood of other motor vehicles lawfully using the same and meeting or crossing the levee from the opposite direction at the same time he crossed, and he continued to pursue his course of conduct in driving 50 miles per hour in the center of the road and without keeping a lookout for such vehicles.

At a time when appellee Hunt was in the view of appellant and on Hunt's right half of the gravel roadway approaching appellant at 30 miles per hour, the appellant suddenly and abruptly, without observing the highway ahead of him and without knowing Hunt's car was approaching, abruptly turned his car to his left to avoid rocks in the path of his left wheels, causing the rear end of his car to fishtail to its right. Appellant's car continued across his left half of the highway and collided with Hunt's Mustang automobile. The cars struck head-on, with the brunt of the impact, as evidenced by photographs in the record, being to the right front end of each car. Appellant had knowledge there was a likelihood of meeting a car on the levee by the normal flow of traffic from his knowledge of the use of this road and similar roads which crossed the

levee, and the further fact there had been collisions on other roads on the top of the levee, as hereinabove set out, all of which, together with other facts pertaining to his knowledge, as above set out, was (2) sufficient evidence upon which the jury could find it to be a fact or draw reasonable inferences that the appellant drove his motor vehicle with reckless indifference for the safety of his guests.

The appellant testified and was, of course, observed by the jury. He was in the United States Army and 20 years of age at the time he testified and it was within the jury's province to determine his intelligence or lack of intelligence and his ability to know and understand the hazards expected to be encountered in driving his automobile.

Considering the acts and knowledge of the appellant as set out in specifications (1) and (2) immediately above, the appellant drove over the levee knowing that his conduct subjected his passengers to a high probability of injuries:

> ". . . Furthermore, the rule is well established that, in resolving the question of wanton or wilful misconduct, '. . . *every act or omission* entering into the particular happening *must be considered and weighed in connection with all the other circumstances,* and in arriving at such decision the *consequences of one's conduct* as well as the conduct itself may be determining factors, . . .' 60 C.J.S., *Motor Vehicles,* § 399 (4) f., p. 1007, *Sheets* v. *Stalcup* (1938), 105 Ind. App. 66, 13 N. E. 2d 346; *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836. (Our italics.)" *Brown* v. *Saucerman, supra,* at page 618.

It is not necessary that appellant have actual knowledge of the approaching automobile of appellee, Hunt, from the opposite side of the levee, as the act of the appellant is one from which the injury could reasonably have been anticipated at a natural and probable consequence of such act or omission.

In *Parker, Administrator* v. *The Pennsylvania Company* (1893), 134 Ind. 673, which was an action by appellant's administrator against the railroad company for the wrongful

death of appellant's decedent, who was unacquainted with a certain building and its surroundings owned by the appellee, when he walked into the same and was killed. Two paragraphs of the complaint proceeded on the theory of negligence and two paragraphs proceeded on the theory of *wilfulness* in the acts complained of.

The court, in discussing the matter of *wilfulness*, said:

"Considering the right of recovery as for willfully causing the death of the plaintiff's decedent, it is proper to observe the absence of an allegation that appellee's operatives knew of the presence of Parker. That one may be held liable for the consequences of a willful act without an actual knowledge of the presence of the object acted upon is urged, and may be conceded; but this liability is never held where the act or the omission is one from which the injury could not reasonably have been anticipated as the natural and probable consequence of such act or omission. *Louisville, etc., R. W. Co.* v. *Bryan, supra.* In this case the rule was correctly stated by the late Judge Mitchell as follows: 'Where one person negligently comes into a situation of peril, before another can be held liable for an injury to him, it must appear that the latter had knowledge of his situation in time to have prevented the injury. Or it must appear that the injurious act or omission was by design, and was such—considering time and place—as that its nature and probable consequence would be to produce serious hurt to some one. To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi criminal.*' *Louisville, etc., Canal Co.* v. *Murphy,* 9 Bush, 522; *Louisville, etc., R.R. Co.* v. *Filbern,* 6 Bush, 574; *Peoria Bridge Ass'n* v. *Loomis,* 20 Ill. 235."

We have heretofore set out that there was evidence that appellant was guilty of wrongful acts or omissions of elements (1) and (2) of wanton or wilful misconduct under *Brown* v. *Saucerman, supra,* and we are of the further opinion that under the evidence his acts were (3) that he did so act knowing that his conduct subjected his guests to a probability of injury.

The appellant contends the trial court erred in refusing to direct a verdict for him at the close of appellee's evidence in chief. We have heretofore in this opinion set forth acts of the appellant which, in our opinion, constituted wanton misconduct on his part, which proximately caused the injuries to appellee. The evidence as above related certainly forms a basis for all reasonable inferences to be deducible therefrom and it was within the province of the jury to draw such inferences.

We cannot, because of the evidence heretofore set out, say as a matter of law that the evidence fails to establish one or more of the essential elements to a recovery. And, further, we cannot say that the reasonable inferences which may be drawn from the evidence are without conflict and favorable only to the defendant-appellant. It seems apparent that the evidence was sufficient to present a question of fact to the jury as to whether the defendant-appellant operated his motor vehicle conscious of his conduct in reckless indifference for the safety of the appellee and knowing that his conduct subjected appellee to a probability of injury.

The case of *Geary* v. *Chicago & Calumet District Transit Co.* (1969), 144 Ind. App. 192, 245 N. E. 2d 187, quoting from *Slinkard* v. *Babb, Wilson* (1954), 125 Ind. App. 76, 112 N. E. 2d 876, stated:

> "It is well settled that the trial court may, and it is its duty upon proper request, to direct a verdict for the defendant in cases where the evidence most favorable to the plaintiff, together with all reasonable inferences which a jury might draw therefrom is insufficient to establish one or more facts essential to the plaintiff's right of action."

We are of the opinion that there was sufficient evidence to establish facts essential to plaintiff's right of action and the trial court properly refused to direct a verdict at the close of plaintiff's evidence. *Indiana Insurance Co.* v. *Handlon* (1940), 216 Ind. 442, 24 N. E. 2d 1003; *Slinkard* v. *Babb, Wilson* (1954), 125 Ind. App. 76, 105 N. E. 2d 342.

At the close of plaintiff's evidence in chief appellant also filed his motion and request for instructions withdrawing certain issues from the consideration of the jury, which issues were charges of wanton misconduct, and which the court overruled, after overruling appellant's motion for a directed verdict.

We have heretofore held in this opinion that the court correctly overruled the motion for directed verdict. We now hold that the court was correct in refusing to give the tendered instructions to withdraw issues of wanton misconduct from the jury.

The trial court, after overruling the motion for a directed verdict, to be consistent in its rulings, had no alternative other than to refuse the tendered instructions, as the tendered instructions were another attempt of appellant to keep appellee from getting her case to the jury. A withdrawal of the allegations of wanton misconduct as charged in the complaint would have been as devastating to her cause of action and her right to recover as a ruling adverse to her on the motion for a directed verdict.

At the close of all the evidence appellant filed his motion for a directed verdict and also tendered instructions withdrawing certain issues from consideration of the jury. The motion for directed verdict was denied by the court and the instructions withdrawing certain issues from consideration of the jury were also denied.

Appellant questions the court's ruling in refusing to give his tendered instruction for a directed verdict at the close of all the evidence. In deciding that there was sufficient evidence to support the court's ruling on appellant's motion for a directed verdict at the close of plaintiff's evidence and, further, in deciding that there was sufficient evidence to support the verdict for the reasons heretofore set out we are of the opinion that this instruction was properly refused. Since we have determined that the evidence was sufficient to support the verdict, appellant's alleged error that the court erred in overruling

appellant's motion for a directed verdict at the close of all the evidence is of no merit. *Westfield Gas Corporation* v. *Hill* (1961), 131 Ind. App. 558, 169 N. E. 2d 726, Transfer denied March 10, 1961.

It is elementary that if the trial court correctly refused to grant the motion for directed verdict at the close of all the evidence, then the court correctly refused to give the instructions withdrawing the charges of wanton misconduct from the jury, and, therefore, needs no citation of authority.

As we have heretofore stated, it appears from the evidence contained in the record there is some conflict therein. It is a well established rule that the weight of the evidence and the credibility of the witnesses are for the trial court and not the appellate tribunal to determine, and where such evidence is conflicting this court will only consider the evidence in favor of the party in whose favor the judgment was rendered. *Brennan* v. *Reydell* (1962), 134 Ind. App. 298, 187 N. E. 2d 492. We do not weigh the evidence.

Considering the evidence most favorable to the appellee, we are of the opinion that the jury's verdict was supported by sufficient evidence of probative value.

It is further the well established rule that it is only where the evidence is without conflict and can lead to but one conclusion, and the trial court, or jury, has reached an opposite conclusion, that the decision of the jury or of the trial court will be set aside on the ground it is contrary to law. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 103 N. E. 2d 669. We are of the opinion that reasonable men would differ on the evidence adduced and such evidence, being in conict, would not lead to but one conclusion.

From an examination of the record before us we cannot say appellant was denied the relief to which he was entitled under the evidence. The verdict of the jury was, therefore, not contrary to law.

Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Carson and Lybrook, JJ., concur; Sullivan, J., dissents with opinion.

## DISSENTING OPINION

SULLIVAN, J.—I cannot agree with the opinion which reflects the view of my colleagues in this matter.

While I agree that the photographs in evidence below justify a finding by a jury of reasonable men that the defendant-host was operating his vehicle at an excessive speed, I am not in accord with the majority statement that such photographs constitute evidence of failure on the part of appellant to keep a reasonable lookout and failure to have his automobile under control. The case of *Samuel-Hawkins Music Co., Inc.* v. *Ashby* (1965), 246 Ind. 309, 204 N. E. 2d 679, relied upon by the majority in this regard is not applicable for in that case the pictures involved depiction of the physical scene demonstrating the view which each driver had at the time of the collision. The pictures here introduced were solely of the physical damage. The permissible inferences which might be drawn from such pictures are substantially different in my view.

Further, I cannot concur in the impression of negligent conduct on the part of defendant-appellant created by the statement in the majority opinion that appellant "continued up the middle of the traveled portion of the road and across the levee * * *". The undisputed evidence actually was that the road approaching up the levee consists of only three tire tracks, the middle one being the track necessarily occupied by the left wheels of each of two vehicles approaching from opposite directions. The physical facts, therefore, in my opinion belie the conclusion that defendant was, prior to cresting the levee, operating his vehicle unnecessarily in the middle of the road.

In addition, I cannot equate the speculative statement made by appellee to the effect that, "Wouldn't it be awful or terrible

*if* a car was coming up the otherside?", (Emphasis supplied) with the warning of peril noted or required in cases cited by the majority opinion.

In conclusion, I fail to see any substantial distinction between this case on its facts and that of *Butcher* v. *Hull,* decided unanimously by this Division on November 16, 1970, in which we reversed a plaintiff's verdict and directed the trial court to grant defendant a new trial. Accordingly, I would reverse.

NOTE.—Reported in 264 N. E. 2d 71.