AMERICAN TURNERS OF SOUTH BEND, INDIANA AND ASSOCIATED REALTY CORPORATION *v.* FREDERIC N. RODEFER

[No. 2-276A35. Filed February 16, 1978. Rehearing denied March 20, 1978. Transfer denied May 26, 1978.]

*William J. Reinke, Jack C. Dunfee, Jr., Thornburg, McGill, Deahl, Harman, Carey & Murray*, of South Bend, for appellants.

*George T. Patton*, of South Bend, for appellee.

HOFFMAN, J.—Plaintiff-appellee Frederic N. Rodefer filed an action against defendants-appellants American Turners of South Bend, Indiana, and Associated Realty Corporation for recovery of $10,000 earnest money which he had deposited with appellants pursuant to a real estate sales contract whereby he agreed to purchase certain real estate owned by American Turners for the sum of $160,000. Such agreement was expressly conditioned upon Rodefer's ability to secure a firm commitment for a mortgage loan. Associated Realty Corporation was the listing agent for the sale of the foregoing real estate, received payment of the earnest money deposit, and is holding the earnest money deposit in a separate trust account.

Rodefer's complaint alleged that he was unable to secure mortgage financing and is therefore entitled to a refund of the earnest money.

Appellants filed a counterclaim for damages incurred as a result of Rodefer's failure to consummate the real estate sale.

Trial to the jury commenced November 6, 1975. Rodefer filed a motion for judgment on the evidence at the close of all the evidence, asserting that the evidence "conclusively established that plaintiff did not obtain mortgage financing." A hearing was held on Rodefer's motion. The appellants then moved for judgment on the counterclaim and a hearing was held. The trial court denied appellants' motion but granted plaintiff's motion, treating the motion as one for plaintiff and against the counterclaimants so that all issues in the case were resolved. Accordingly, the trial court entered judgment for Rodefer in the sum of $10,000, ordered Associated Realty to return the $10,000 earnest money deposit to plaintiff, and stated that the return of the deposit should be taken to be satisfaction of the judgment entered against American Turners.

Subsequently American Turners and Associated Realty filed their respective motions to correct errors which were denied by the trial court.

The issues presented for our resolution concern the propriety of the trial court's action in entering judgment on the evidence.

Indiana Rules of Procedure, Trial Rule 50 (A), provides, in pertinent part, as follows:

"Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. . . ."

The generally stated standard to be applied by the trial court when considering a motion for judgment on the evidence made at the conclusion of the evidence requires the trial court to consider only the evidence and reasonable inferences most favorable to the nonmoving party. The motion may be granted only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. If there is any evidence or reasonable inferences to be drawn from the evidence, or if reasonable men might differ, then judgment on the evidence is improper. *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985; *Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173; *Lake Mortgage et al. v. Federal Nat'l. Mortg.* (1974), 159 Ind. App. 605, 308 N.E.2d 739 (transfer denied, 262 Ind. 601, 321 N.E.2d 556).

Rodefer contends, however, that the aforementioned standard becomes inapplicable when both parties seek judgment on the evidence. Relying on *Estes v. Hancock Co. Bank* (1972), 259 Ind. 542, 289 N.E.2d 728, Rodefer asserts that the effect of both parties moving for judgment on the evidence in a jury trial is to withdraw the case from the jury and to submit the case to the court for its determination. The result is that the case would then be considered as if it had been tried without a jury.

The *Estes* decision drew its support from 2 Wiltrout, Indiana Practice, § 1552(4), at 431 (1967), an authority predating Trial Rule 50. The rule under prior Indiana law provided that "where both parties request a peremptory instruction and *do nothing more*, they thereby assume the facts to be undisputed and in effect submit to the trial judge the determination of the facts and all inferences proper to be drawn therefrom." *Michigan Cent. R.R. Co. v. Spindler, Admr.* (1937), 211 Ind. 94, 105, 5 N.E.2d 632, 108 A.L.R. 1307. *See also, State Security Life Ins. Co. v. Kintner* (1962), 243 Ind. 331, 185 N.E.2d 527; *Wilson, Admx. v. Rollings* (1938), 214 Ind. 155, 14 N.E.2d 905. However, the party whose motion for a directed verdict was denied could insist by appropriate request upon proceeding with the trial or submitting the questions of fact to the jury. *Michigan Cent. R.R. Co. v. Spindler, Admr., supra.* Thus, it was not the filing of the concurrent motions for directed verdict which resulted in waiver of trial by jury, but rather the failure to object to the withdrawal of the case from the jury. *State Security Life Ins. Co. v. Kintner, supra; Michigan Cent. R.R. Co. v. Spindler, Admr., supra.*

Indiana Rules of Trial Procedure, Trial Rule 50(A)(6), changed the prior rule by providing that,

"A motion for a judgment on the evidence which is not granted or which is granted only as to a part of the issues is not a waiver of trial by jury even though all parties to the action have moved for judgment on the evidence."

The Civil Code Study Commission Comments reveal that this provision was intended to abrogate the prior Indiana rule of waiver of the right to jury trial when both parties move for a directed verdict at the conclusion of the evidence. 3 Harvey, Ind. Pract. — Rules of Civ. Proc., *Civil Code Study Commission Comments* — Rule 50(a), at 365 (1970). Consequently, when appellants' motion for judgment on the evidence was denied by the trial court, appellants did not waive their right to a jury trial. Accordingly, the trial court could not itself weigh the evidence and determine for whom it preponderated, but rather was required to apply the standard of review delineated in *Huff v. Travelers Indem. Co., supra; Vernon Fire & Casualty Co. v. Sharp, supra;* and *Lake Mortgage, et al. v. Federal Nat'l. Mortg., supra.*

In applying that standard, the evidence discloses that on December 15, 1971, American Turners of South Bend, Indiana, entered into a "Commercial Property Listing Contract" with Associated Realty under a multiple listing arrangement whereby Associated Realty or any other member of the Multiple Listing Service of the South Bend-Mishawaka Board of Realtors, Inc. had authority to sell the property owned by American Turners.

In October, 1972, Rodefer talked with Frank Riedle, a realtor for Whitcomb & Keller, Inc., and a member of the Multiple Listing Service, with regard to the American Turners' property. As a result of this meeting, Rodefer made an offer to purchase the real estate. American Turners rejected this offer and made a counter-offer. In response, on October 27, 1972, Rodefer signed a "Purchase Agreement" in which he agreed to purchase from American Turners through Associated Realty the subject real estate for the sum of $160,000, with $10,000 earnest money deposit. The "Purchase Agreement" was in the form of an offer, subsequently accepted, which provided, in pertinent part, as follows:

"A. This offer is expressly conditioned on Purchaser's ability to secure within 30 days of acceptance of this offer a firm commitment for a mortgage loan in an amount not less than *One Hundred Six Thousand Dollars* ($106,000.00) to be amortized monthly over a period of not less than *10* years. Purchaser agrees to make a good-faith effort to obtain said mortgage.

* * *

"The said earnest money deposit shall be returned in full to Purchaser promptly in event this proposition is not accepted. In the event this proposition is accepted, and Purchaser shall, without legal cause, fail or refuse to complete the purchase of said real estate in accordance with the terms and conditions hereof, said earnest money deposit shall be retained by the Realtor/Broker under his listing contract with said seller and shall be applicable to the Realtor's/Broker's and Seller's damages. In the event the Sellers default in the terms and conditions of this agreement, the Purchaser shall be entitled to recovery of the earnest money deposit. * * *."

The record further discloses that on or about November 3, 1972, Rodefer went to The National Bank and Trust Company of South

Bend and filed an application for a mortgage loan. Following the bank's customary practice, the information requested in the application was completed by Richard Wine, one of the bank's employees. The application was made out in the names of Frederic N. Rodefer and Carol M. Rodefer. Although Mrs. Rodefer did not go to the bank nor sign the application form, there was evidence that it was not unusual for either the husband or wife to come to the bank alone and sign the application. Moreover, Mr. Rodefer did review the application before he signed it. Furthermore, Mr. Rodefer knew the loan committee of the bank would rely on the accuracy of the statements made in the application in deciding whether to grant the loan. At no time did Rodefer advise the bank that his wife would not sign the application. Nor did Rodefer at any time ask Wine to complete a loan application in his name alone. Rodefer did not at any time request a loan application in a form other than that shown in the application filled out by Wine.

The loan was subsequently approved by the bank for Frederic N. Rodefer and Carol M. Rodefer in the amount of $106,000 for a term of 15 years at 8% with payment amortized monthly. A commitment letter was sent November 13, 1972, to Frank Riedle of Whitcomb & Keller, Inc. Arthur Largent, Vice-President of National Bank in the mortgage loan department, notified Rodefer by telephone of the loan approved.

In December, 1972, Rodefer mentioned to his wife that he had made an offer to purchase the American Turners' property. Mrs. Rodefer was not in favor of the purchase and refused to sign the mortgage loan.

In January, 1973, Rodefer talked to Michael Baim of the First Bank and Trust Company about financing two parcels of real estate. At one of these meetings Rodefer proposed an industrial revenue bond as a means of financing the property. Finally, the discussions with First Bank terminated with Rodefer never having made a formal loan application.

Rodefer did not state he would not go through with the transaction until May 21, 1973, two days before closing. Meanwhile, Rodefer held a "smoker" on the American Turners' property without

compensation to American Turners, and sought permission to tear down the gymnasium prior to the time set for closing.

From the foregoing evidence it is clear that plaintiff did not obtain mortgage financing in his name alone. However, the Purchase Agreement was not contingent upon Rodefer actually acquiring loan approval. Rather the agreement was conditioned upon Rodefer's ability to secure a firm commitment for a mortgage loan. *See, Blakley v. Currence* (1977), 172 Ind. App. 668, 361 N.E.2d 921. Moreover, the purchase agreement expressly provided that Rodefer was to make a good-faith effort to obtain the mortgage. The evidence would support an inference that Rodefer did not act in good faith in trying to obtain a mortgage. A commitment for a mortgage loan was made to Rodefer and his wife. And, while Mrs. Rodefer had no contractural relationship with American Turners, the evidence supports the inference that Rodefer made the mortgage application in both his and his wife's name. Moreover, Rodefer did not at any time ask for a mortgage loan in his name alone. Consequently, it was for the jury to determine whether plaintiff made a good-faith effort to secure a firm commitment for a mortgage loan. Accordingly, the judgment of the trial court is reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Staton, P.J. and Garrard, J. concur.

NOTE—Reported at 372 N.E.2d 516.