Beth Ann KECK, a minor, and Paul
Keck, her father, Appellants
(Plaintiffs Below),

v.

Thomas J. KERBS, Appellee
(Defendant Below).

No. 3–378A64.

Court of Appeals of Indiana,
Third District.

Oct. 24, 1979.

Rehearing Denied Nov. 7, 1979.

William F. Carroll, Crown Point, for appellants.

William F. Satterlee, III, Valparaiso, John E. Hughes, Hoeppner, Wagner & Evans, Lowell, for appellee.

STATON, Judge.

Beth Ann Keck, a minor, and Paul Keck, her father, filed suit against Thomas J. Kerbs alleging that Kerbs was guilty of wanton or wilful misconduct in operating an automobile in which Beth Ann Keck was a passenger. As a result of such misconduct, Beth Ann sustained personal injuries in an accident when Kerbs' automobile struck a utility pole. Trial before a jury commenced. At the close of the presentation of all evidence, the trial court granted Kerbs' motion for judgment on the evidence, pursuant to Ind.Rules of Procedure, Trial Rule 50(A)(3).

The Kecks appeal and seek review of the following issue:

Did the trial court err when it granted Kerbs' motion for judgment on the evidence after all parties had rested?

We reverse.

The Kecks assert that the evidence most favorable to the Kecks establishes a question of fact for the jury to resolve whether Beth Ann's injuries resulted from Kerbs' wanton or wilful misconduct within the meaning of the Indiana Guests Statute, IC 1971, 9–3–3–1, Ind.Ann.Stat. § 47–1021.[1]

Kerbs maintains that the accident is attributable to a mere error of judgment not rising to the quality necessary to invoke the wanton or wilful label. He argues that there was not enough evidence of wanton or wilful misconduct to warrant submission of the case to the jury.

■ The generally stated standard to be applied by the trial court when considering a motion for judgment on the evidence proffered at the conclusion of all evidence requires the trial court to consider only the evidence most favorable to the nonmoving party. The motion may be granted only if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim. If there is or if reasonable persons might differ, then judgment on the evidence is improper. *Huff v. Travelers Indemnity Company* (1977), 266 Ind. 414, 363 N.E.2d 985, 990; *American Turners of South Bend v. Rodefer* (1978), Ind.App., 372 N.E.2d 516, 517. *See Barbee v. McKay* (1968), 143 Ind. App. 205, 238 N.E.2d 690.

*A. Material Facts*

On the afternoon of January 24, 1975, Thomas J. Kerbs, age 17 years, was among a group of boys who met at the Crown Point home of a friend, Bob Keck, when school let out early. Kerbs arrived between 1:30 p. m. and 2:00 p. m. The group drank beer and peppermint schnapps.

Beth Ann Keck, age 10 years; Sheila Pyke, age 11 years; Christopher Brady, approximately 12 years old; and Tom Keck, approximately 12 years old, were also at the Keck residence. Kerbs decided to drive to Zip Foods, located about a mile from the Keck residence on the Crown Point-Cedar Lake Road. Beth Ann wanted to purchase some candy and received permission from her older brother Bob to accompany Kerbs. Sheila, Christopher, and Tom also went along with Kerbs.

---

1. "9–3–3–1 [47–1021]. Guest of owner or operator—Right to damages.—The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

Sheila testified that Kerbs held a can of beer between his legs on the way to the store. Kerbs testified that he did not recall whether or not he had taken any beer along with him.

Kerbs testified that he had driven the Crown Point-Cedar Lake Road many times and was aware of a blind spot in the road near 125th Avenue. The weather condition that day was sunny and the road "looked kind of dry." The posted speed limit was 30 m. p. h.

Kerbs drove faster than the speed limit on the way to Zip Foods. Otherwise the trip was uneventful and Kerbs stopped at a posted stop sign both to and from the store. On the return trip to the Keck residence, Kerbs was behind a slower moving vehicle. As Kerbs approached the intersection of Crown Point-Cedar Lake Road and 125th Avenue, he pulled over into the opposite lane to pass.

The point where Kerbs chose to pass was at a blind spot where shrubbery and trees obstruct clear vision of oncoming traffic. As Kerbs had almost completed passing the vehicle, he suddenly realized that a car was approaching from the blind spot. He sped up and managed to pull in front of the vehicle he was passing. However, he lost control of his car and was unable to slow down. His vehicle went on and off of the berm several times and eventually crashed into a utility pole. The car was totalled.

Beth Ann and Sheila had been conversing in the back seat. Sheila and Christopher each estimated that the Kerbs' car was travelling at least 60 m. p. h. while passing.

The crash occurred at 3:45 p. m. Officer Keith A. Foors of the Lake County Police Department investigated the accident. Foors talked with Kerbs at the scene and later at the hospital where Kerbs was treated for lacerations. Foors noticed the distinct smell of intoxicating liquor on Kerbs' breath both at the accident site and at the hospital. Based on his observations at the accident scene as well as his experience as a police officer, Foors concluded that Kerbs was intoxicated. Kerbs was arrested on a charge of driving while under the influence of intoxicating liquor and was released to his father's custody. No field tests or breathalyzer tests were administered.

The children, Beth Ann, Sheila, and Christopher, each testified that Kerbs did not appear to be drunk when they left for Zip Foods. Betty Mae Keck, Beth Ann's mother, conversed with Kerbs at the hospital between 7:30 p. m. and 8:00 p. m. and stated that Kerbs had an intoxicant on his breath.

On January 25, 1975, the day after the accident, Kerbs pled guilty to the charge of influence of an intoxicating beverage. At the Keck trial, Kerbs testified that when he pled guilty he had not realized that he was admitting that he was drunk, just that he had some alcohol in his blood. He testified that he had consumed 2–3 beers in a period of an hour and forty-five minutes.

Additionally, Kerbs testified that he knew that drinking and driving don't go together but that he did not feel that he was under the influence of alcohol as he was driving the car. Kerbs indicated that he had been unable to slow the car down because his foot was temporarily wedged beneath the brake pedal. Officer Foors testified that Kerbs had not told him about the foot being lodged under the brake pedal; instead, Kerbs had indicated that he did not know why the accident had occurred.

### B. Wanton or Wilful Misconduct

The rule with regard to wanton or wilful misconduct has been generally stated as follows:

"In order to constitute willfulness or wantonness within the meaning of this rule, the acts or conduct of the operator of the motor vehicle causing the injury must be done under circumstances which show that the operator is aware, from his knowledge of existing conditions, that it is probable that injury will result from his acts or omissions, and nevertheless proceeds with reckless indifference as to the consequences, or acts without consideration for others on the highway or without care for their safety; but it is not necessary that the driver should have

any ill will toward the person injured or that he intend to cause, or deliberately cause, the accident or injury in question.

"More precisely, it has been held that there is a distinction between the terms 'willful' and 'wanton,' as used in such cases, in that 'willful' implies intent or purpose, while 'wanton' expresses a reckless disregard of consequences." [Footnotes omitted.]

60A C.J.S. *Motor Vehicles* § 258 (1969).

The rule has been stated by Indiana courts as follows:

"Willful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result."

*Becker v. Strater* (1947), 117 Ind.App. 504, 72 N.E.2d 580, 581. *See Sausaman v. Leininger* (1957), 237 Ind. 508, 146 N.E.2d 414; *Bedwell v. DeBolt* (1943), 221 Ind. 600, 50 N.E.2d 875; *Cheek v. Hamlin* (1972), 150 Ind.App. 681, 277 N.E.2d 620; *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171; *Brueckner v. Jones* (1970), 146 Ind. App. 314, 255 N.E.2d 535.

In *Sausaman v. Leininger, supra,* 146 N.E.2d at 418, our Supreme Court discussed the statutory requirements:

"[T]here must be a 'perverse motive,' in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom. However, as heretofore stated, this does not mean that the wrongful conduct of the driver must be motivated by malice, ill will, or intent to injure. Our statute . . . uses the words 'wanton or wilful' in the disjunctive. Therefore, it is sufficient to meet the condition of the statute if the misconduct is *wanton.*

"The fact that appellant was a youth and that wanton impulses may be natural to young people does not excuse appellant of his misconduct. Neither does his immaturity excuse his failure to contemplate the consequences of his act. There is nothing in the statute which indicates a legislative intent that we should place one construction on the statute as applied to young people and another to adults. Therefore, in determining whether the driver of a motor vehicle had knowledge that injury would probably result from his wanton misconduct, responsibility for such knowledge must be measured by the standard with which reasonable men of ordinary intelligence are chargeable under the circumstances. Under our statute no person, young or old, can operate an automobile on the public highway in a manner controlled by wanton impulse or motive, under conditions known likely to produce injury, without being legally responsible to his guests for injuries caused thereby."

■ The elements constituting wanton misconduct are met if the driver (1) is conscious of his misconduct; (2) is motivated by reckless indifference for the safety of his guests; and (3) knows his conduct subjects his guests to a probability of injury. *Clouse v. Peden* (1962), 243 Ind. 390, 186 N.E.2d 1; *Brown v. Saucerman* (1957), 237 Ind. 598, 145 N.E.2d 898.

Other guidelines which a trial court should apply in its evaluation of guests cases include:

"a. An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

"b. The host must have manifested an attitude adverse to the guest, or of 'perverseness', in that the host must have shown he was indifferent to the consequences of his conduct.

"c. The entire course of conduct of the host leading up to the accident must be considered.

"d. The host must have had actual knowledge of danger confronting the guest."

*Brueckner v. Jones, supra,* 255 N.E.2d at 543.

■ The requisite knowledge or consciousness may be obtained through the use

of the driver's faculties as well as from information conveyed to the driver in the nature of warnings by others. *Bedwell v. DeBolt, supra; Cheek v. Hamlin, supra; Mazza v. Kelly, supra; Swinney v. Roler* (1943), 113 Ind.App. 367, 47 N.E.2d 846. Liability in a guests action has been imposed when the driver received no warning from the guest. *Fuller v. Wiles* (1972), 151 Ind.App. 417, 280 N.E.2d 59 (driver suddenly accelerated after stopping at a stop sign and crashed into concrete wall facing intersection.).

■ Intoxication of the driver by itself is usually not evidence of wanton or wilful misconduct within the meaning of the Guests Statute. *Oliver v. Estate of Clemons* (1968), 142 Ind.App. 499, 236 N.E.2d 72. However, intoxication may combine with other elements to constitute such misconduct. Thus, intoxication combined with excessive speed or a weaving motion has been held to raise a question of fact for the jury's determination. *Oliver, supra; Hubble v. Brown* (1949), 227 Ind. 202, 84 N.E.2d 891.

### C. Role of Jury

■ The courts of appeal apply the test or rule that in every case, if possible, the weighing of the evidence should be left to the jury. *Cheek v. Hamlin, supra.* Each case involving wanton or wilful misconduct must be decided and turn on the circumstances as shown by the evidence to be particularly peculiar or unique to that case; every act must be considered and weighed in connection with all other circumstances. *Cheek v. Hamlin, supra.*

The trial judge overruled Kerbs' motion for judgment on the evidence at the close of the Kecks' evidence. The following transpired at the close of the presentation of all evidence:

"THE COURT: I overruled it [previous motion for judgment on the evidence] because I felt that the plea of guilty to driving under the influence of intoxicating liquor was an admission that could have been enough under this one case to bring it under willful and [*sic*] wanton.

"MR. SATTERLEE: I feel then that, your Honor, any presumptions raised by that have been resolved by the testimony of our witness [Kerbs].

"THE COURT: I think so."

We have been unable to determine the case(s) to which the trial judge referred at various times because of the oblique references in the record.

■ The jury is the judge of the credibility of the witnesses. A person's self-serving statements which negate a liability incurring state of mind may be disbelieved by the jury. *Sausaman v. Leininger, supra; Brown v. Richards* (1972), 151 Ind.App. 57, 277 N.E.2d 910. In *Morgan v. Reneer* (1970), 148 Ind.App. 90, 264 N.E.2d 71, 77, we discussed the jury's role:

"The appellant testified and was, of course, observed by the jury. He was in the United States Army and 20 years of age at the time he testified and it was within the jury's province to determine his intelligence or lack of intelligence and his ability to know and understand the hazards expected to be encountered in driving his automobile."

### D. Question of Fact

The issue which we must decide is whether the evidence adduced at trial raised a question of fact which could be resolved only by the jury.

Kerbs urges us to consider *Fielitz v. Allred* (1977), Ind.App., 364 N.E.2d 786, for the proposition that a driver's drinking of alcohol does not constitute the mental attitude necessary for wanton or wilful misconduct. The evidence in the *Fielitz* case is distinguishable from that presented in the case at bar. That court noted:

"Although the evidence in the case at bar is uncontradicted that appellee had consumed two or three beers shortly before the accident, the evidence is also uncontradicted that appellee's ability to drive the automobile was not impaired thereby. Officer Selking testified that during the course of his investigation of the accident he became aware of the fact that appellee had been drinking but that

she did not appear to be intoxicated nor her ability impaired in any way. Appellant had likewise stated that appellee's ability to drive her automobile was not affected by her consumption of alcohol. Thus there is no substantial evidence of probative value to show that appellee's underage drinking contributed in any way to the accident."

364 N.E.2d at 789.

Here, the evidence presented shows that Kerbs had consumed at least two or three beers shortly before the accident. Though the children who were passengers in Kerbs' car felt that he was not intoxicated, a police officer testified that Kerbs was under the influence of intoxicants at the time of the accident. And Kerbs pled guilty to a charge of driving while under the influence of an intoxicating beverage.[2]

The factual situation in *Jones v. Motley* (1974), 160 Ind.App. 21, 309 N.E.2d 173, is more closely akin to the case at bar than *Fielitz*. In *Jones,* a guests action, the plaintiffs testified that the defendant did not appear to be drunk when they entered the vehicle. The weather conditions were adverse to good driving conditions and the defendant exceeded the speed limit though warned by a guest passenger to slow down. While attempting to pass another vehicle, his car crossed the center line and collided with an oncoming car. The investigating officer testified that the defendant's breath smelled of alcohol, his speech was slurred, and he was obviously drunk. The defendant was charged with, but not found guilty of, driving under the influence, reckless driving, and being drunk.

The jury returned verdicts for the plaintiffs. The finding of wanton misconduct was affirmed by this Court, noting:

"Favorable evidence before the jury indicated a combination of at least five of the elements involved in wilful and wanton misconduct. Speeding at night, poor visibility, intoxication, crossing the center line to pass another vehicle at or near an intersection, and a warning from a guest."

309 N.E.2d at 176.

The evidence presented in the case at bar shows a combination of factors possibly indicating wanton or wilful misconduct: consumption of alcohol shortly before the accident; underage drinking; excessive speed; familiarity with the blind section of the road; the short distance of approximately a mile between the Keck residence and the store; the guilty plea to driving while under the influence; and the police officer's observations.

■ The evidence was sufficient to raise at least an inference of wanton misconduct on Kerbs' part. Therefore, the evidence raised a factual question for the jury's determination. We cannot say as a matter of law that Kerbs was not guilty of wanton or wilful misconduct which proximately caused Beth Ann Keck's injuries.

2. The guilty plea was stipulated to at the time of trial. A copy of that judgment was not entered into evidence. We assume that he pled guilty to IC 1971, 9–4–1–54(b), Driving While under the Influence of Intoxicating Liquor . . [since amended.]. The violation of a statute does not necessarily constitute wanton or wilful misconduct within the meaning of the Guests Statute. *Becker v. Strater* (1947), 117 Ind.App. 504, 72 N.E.2d 580.

IC 1971, 9–4–1–54(b), does not provide a definition of "under the influence":

"Any person who drives a vehicle while such person is under the influence of intoxicating liquor . . . shall be guilty of a criminal offense."

The elements of this charge do not necessarily mean that the driver must be in a state of "intoxication" for other statutory purposes. However, "under the influence" was definition-ally equated with "intoxication" for purposes of the implied consent statute in IC 1971, 9–4–4.5–2(a) [since amended]:

"The term 'intoxication' for the purposes of this chapter . . . shall mean the same as the term 'under the influence', i. e., an impaired condition of thought and action and the loss of normal control of one's faculties to a marked degree, caused by the use of alcohol or drugs, or a combination of alcohol and drugs, to such an extent as to endanger other persons using the public highways."

A chemical test is not required to support a conviction under 9–4–1–54(b). *State v. Hummel* (1977), Ind.App., 363 N.E.2d 227 (failure of officer to accord arrestee the opportunity to be chemically tested for alcohol did not affect validity of arrest; only effect would be that arrestee was not subject to penalty of license suspension for failure to submit to test.).

The trial court erred in granting Kerbs' motion for judgment on the evidence at the close of all evidence.

We reverse and remand to the trial court for a new trial.

GARRARD, P. J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

In the recent decision of *Andert v. Fuchs* (1979), Ind., 394 N.E.2d 931[1] the Supreme Court held that evidence showing that the defendant drove his pickup truck on icy, slick and wet roads while he was intoxicated was insufficient to give rise to an inference of wanton or wilful misconduct.

I fail to see that the evidence of the conditions under which Kerbs operated his vehicle established a degree of misconduct greater than that shown in *Andert*.

Accordingly, I would hold that the trial court properly granted Kerbs' motion for judgment on the evidence.

1. Vacating *Andert v. Fuchs* (1978), Ind.App., 381 N.E.2d 1081.