**Carolyn J. SHARP, Plaintiff-Appellant,**

v.

**Calvin E. EGLER and Bill Hanka Auto Sales, Inc., d/b/a Clarksville Auto Mart, Defendants-Appellees.**

**No. 80-2650.**

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1981.

Decided Aug. 25, 1981.

Rehearing Denied Nov. 2, 1981.

---

David V. Scott, New Albany, Ind., for plaintiff-appellant.

Richard T. Mullineaux, New Albany, Ind., for defendants-appellees.

Before SWYGERT, Senior Circuit Judge, BAUER, Circuit Judge, and NICHOLS, Judge.*

SWYGERT, Senior Circuit Judge.

Plaintiff-appellant Carolyn J. Sharp appeals from an order of the United States District Court for the Southern District of Indiana, which dismissed upon summary judgment her personal injury action against defendants-appellees Calvin E. Egler and Bill Hanka Auto Sales, Inc., d/b/a Clarksville Auto Mart. We reverse the judgment of the district court.

I

This tort action arises out of a one-automobile collision that occurred on October 15, 1978 in New Albany, Indiana. At the time of the accident, Sharp was traveling as a passenger in the front seat of an automobile driven by Egler. Sharp, a resident of Kentucky, and Egler, a resident of Indiana, had been seeing each other socially for a few months prior to the accident. On the night of the accident, the two had been attending a party in Louisville, Kentucky. After spending several hours at the party, at which both drank alcohol the two left the party. Sharp and Egler differ as to what their plans were on leaving the party. Sharp stated that they were going to go downtown and then return to the party, as

---

* The Honorable Philip Nichols, Jr., Judge, United States Court of Claims, sitting by designation.

she was spending the night with her hosts. Egler stated that they planned to go to his parents' home in Indiana to spend the night.

Egler's recollection of the evening after leaving the party with Sharp was that they drove to downtown Louisville, stopped at a bar, had a drink, then left for his parents' home in Indiana around 4:00 a. m. Egler took his usual route back from Kentucky to Indiana. As the car traveled down Spring Street in New Albany, it left the traveled portion of the roadway, sideswiped a utility pole, and proceeded to run head-on into a tree. This portion of Spring Street was straight and level, and there were no physical obstructions to the view of the tree. Neither Egler nor Sharp remember the accident or the circumstances leading up to it, except that Egler does remember that just before the accident Sharp gave him a kiss.

The car was totally destroyed. Sharp and Egler were pinned inside the car, and both were severely injured in the crash. Sharp alleges that she sustained the following injuries: crushed and shattered facial bones, both jaws broken, a pelvic fracture, and a hip broken in three places. As of December 1979, her medical expenses were in excess of $13,000, and she has had additional surgery since that time. She has not been able to work since the accident.

In her original complaint filed on March 29, 1979, Sharp sought damages for the personal injuries, which totalled $750,000. The complaint alleged that defendant Egler had been negligent and ran the car into the tree causing her injuries. Sharp later amended her complaint to include Bill Hanka Auto Sales, Inc. (Hanka Auto Sales) as a party-defendant under the theory of *respondeat superior*. The amended complaint alleged that the car driven by Egler, a 1977 Trans Am Pontiac, was owned by defendant Hanka Auto Sales and that Egler as an employee of Hanka Auto Sales was acting within the course and scope of his employment while driving its car the night of the crash.

On November 15, 1979, Egler filed the first of two motions for summary judgment. In his first motion Egler argued that Indiana law and not Kentucky law should be applied, and that plaintiff's allegations of negligence were insufficient under the Indiana guest statute.[1] The district court agreed and dismissed Sharp's motion without prejudice for failure to state a claim upon which relief may be granted. Thereafter, plaintiff filed a second amended complaint against the defendants alleging that the accident was the result of Egler's wilful or wanton misconduct.

The defendants filed a second motion for summary judgment. This motion argued that defendant Hanka Auto Sales was not liable for the acts of Egler, as he was not acting as its agent or employee at the time of the accident, and also that there was no proof that the actions of Egler were wilful or wanton as required under the Indiana guest statute. Granting the defendants' motion on October 22, 1980, the district court found that Sharp was a "guest" passenger within the meaning of the Indiana guest statute, and that she was unable to present sufficient evidence to show that Egler's activities amounted to wanton or wilful misconduct as defined by the statute. The court also held that Hanka Auto Sales, Egler's employer, would not be liable for Egler's actions, if they were tortious, as Egler was not acting within the scope of his employment at the time of the accident.

Sharp has appealed from both summary judgments of the district court. She first contends that the district court in its order of March 4, 1980 wrongfully concluded that Indiana law, which has a guest statute, and not Kentucky law, which has no guest statute, is applicable. She concedes that if

---

1. The Indiana guest statute, I.C. 9–3–3–1, provides:

The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for a loss or damage arising from injuries to or death of a guest, while being transported without pay therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.

Indiana law is applicable, her cause of action falls within Indiana's guest statute. Sharp also contends that it was error for the district court to find that she had not offered sufficient proof of Egler's wanton or wilful misconduct and that Hanka Auto Sales was free of liability under the theory of *respondeat superior.*

We hold that Indiana law is the applicable law in this case and that Sharp's cause of action falls within the Indiana guest statute. In addition, we agree with the district court that Hanka Auto Sales is not liable under the theory of *respondeat superior.* We believe, however, that Sharp has shown sufficient evidence of Egler's alleged wilful or wanton misconduct that a jury could reasonably find her entitled to damages even under the guest statute.

## II

The district court applied the most significant contacts choice of law rule in deciding whether to apply Indiana or Kentucky substantive law.[2] In so doing, the court relied on our decision in *Watts v. Pioneer Corn Co.*, 342 F.2d 617 (7th Cir. 1965), in which we held Indiana's choice of law rule in the area of multistate torts to be the most significant contacts rule, even though prior to *Watts* every Indiana court had applied the rule of *lex loci delicti*, or "the place of the tort."

Although appellant only challenges the district court's choice of Indiana law and not the use of the most significant contacts rule, we note that there has been some confusion regarding Indiana's choice of law since our decision in *Watts.* Shortly after *Watts*, an Indiana appellate court did adopt the most significant contacts rule in a multistate tort case, *Witherspoon v. Salm*, 142 Ind.App. 655, 237 N.E.2d 116 (1968). *With-*

*erspoon* was later reversed on other grounds, however, by the Supreme Court of Indiana, *Witherspoon v. Salm*, 251 Ind. 575, 243 N.E.2d 876 (1969). In reversing, the Indiana Supreme Court made the following disclaimer of the appellate court's choice of law holding: "Under our holding in this case, the question of what statute of limitations applies and which state's Indiana or Kentucky [sic], substantive law applies, are not involved in this case." *Witherspoon, supra*, at 878. This disclaimer resulted in confusion over the effect of the appellate court's decision in *Witherspoon.* One Indiana appellate court afforded no authority to the appellate court's decision to adopt the most significant contacts rule because of the Indiana Supreme Court's disclaimer. *Horvath v. Davidson*, 148 Ind.App. 203, 209, 264 N.E.2d 328, 337 (1970). Another Indiana appellate court, in a more recent opinion, completely ignored the *Witherspoon* decision, as it stated that Indiana has long followed the place of the tort rule in the area of multistate torts.[3] *Maroon v. State Dept. of Mental Health*, Ind.App., 411 N.E.2d 404 (1980).

Even after the Indiana Supreme Court's disclaimer in *Witherspoon*, this court has continued to apply *Watts. Motteler v. J. A. Jones Constr. Co.*, 457 F.2d 917 (7th Cir. 1972). In *Bowen v. United States*, 570 F.2d 1131 (7th Cir. 1978), we noted that the district court's application of the place of the tort rule was contrary to our decision in *Watts* but that the result would be the same even if the most significant contacts rule had been applied.

This case is not, however, the one to decide what continuing validity, if any, *Watts* has, for whether we apply the most significant contacts rule or *lex loci delicti*, the district court was correct in applying

**2.** Under the Supreme Court's decision in *Klaxton Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), federal courts in diversity of citizenship cases must follow the rules prevailing in the forum state when deciding choice of law questions.

**3.** In a concurring opinion Judge Ratliff argues persuasively for the adoption of the "most sig-

nificant contacts rule." In addition, he points out that while the appellate court's decision in *Witherspoon* may lack precedential value, "it clearly points the direction the appellate court wanted to go in rejecting *lex loci delicti* in favor of a more analytical approach." *Maroon, supra*, at 419.

Indiana law. If the place of the tort rule had been used, Indiana law would still apply, since it is uncontested that the accident occurred in New Albany, Indiana.

Despite Sharp's contentions to the contrary, the same result applies if the most significant contacts rule is used. She argues that the district court failed to perform the proper evaluation of the state contacts involved, because it simply added up the "Indiana contacts without analyzing their relationship to the issue involved in the policies and interests of the states involved." [4] She cites the appellate court decision in *Witherspoon, supra*, p. 124, which declared,

> Neither should the mere numerical contacts with one state be balanced with those of another state. Each contact should be evaluated in light of collateral policy considerations and the particular state interests surrounding the rule of law.

Sharp is correct that the application of the most significant contacts rule involves more than simply adding up of contacts, but the district court did more than that here. In making its ruling, the court stated,

> This court finds that Indiana substantive law applies in this case. It is undisputed that Egler is a resident of Indiana, that the accident occurred in Indiana, that the car was licensed in Indiana, that the car was owned by an Indiana corporation, and that the car was insured in Indiana. The State of Indiana clearly has the greater interest in establishing the rules by which this controversy is to be resolved.

These contacts with Indiana are significant.

Indiana has a great interest and concern in seeing that its guest statute is applied. The guest statute was designed in part to protect a resident host driver from guest passengers to whom he has shown his hospi-

tality. Egler is a resident of Indiana and is a licensed driver in Indiana. The guest statute also seeks to protect insurance companies operating in Indiana from collusive lawsuits. Egler's car was insured in Indiana. In addition to these concerns directly related to the guest statute, Indiana has a direct interest in the operation of motor vehicles on its roads. The accident occurred on an Indiana road.

Indiana's interests in this litigation are not only significant but are overwhelming in comparison to Kentucky's interests. Sharp argues that Kentucky's interest in protecting its resident guest passengers is greater than Indiana's interest in protecting its resident host drivers, because it is Kentucky who may have to compensate and support the injured passenger if the host cannot be found liable of wanton or wilful misconduct.[5] She also contends that her status as a guest passenger is more of a concern to Kentucky than Indiana, because the journey began in Kentucky and was to have ended there.[6] Even if these interests can be considered concerns of Kentucky, they nonetheless are insufficient to outweigh Indiana's interests.

### III

On appeal, Sharp also challenges the district court's ruling that she failed to come forward with sufficient evidence of wanton or wilful misconduct on the part of the appellee as required by the Indiana guest statute. The district court found that the only evidence Sharp presented that indicated wanton or wilful misconduct was the fact that appellee had been drinking prior to the accident. The district court concluded this was not enough evidence to show that Egler's conduct met the standards of wanton or wilful misconduct under Indiana law.

---

4. Appellant's Brief at p. 11.

5. Kentucky law does not include a guest statute. In Kentucky a guest passenger is only required to prove the defendant's negligence, not his wilful or wanton misconduct as required by the Indiana guest statute.

6. Egler's version of their plans for the evening are different. He said their plans were to go to his parents' home in Indiana for the evening.

Indiana's courts have defined wanton or wilful misconduct as "the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that the injury will probably result." *Brown v. Saucerman*, 237 Ind. 598, 619, 145 N.E.2d 898, 907 (1957) [quoting *Becker v. Strater*, 117 Ind.App. 504, 506, 72 N.E.2d 580, 581 (1972)]. The Indiana Supreme Court has held that

> [T]he gravamen of an actionable guest act case that distinguishes it from actions not under its purview is the mental attitude of the host driver when the misconduct occurs. Such attitude with respect to both his driving and his guest must have been one adverse to the welfare of the guest.

*Andert v. Fuchs*, Ind., 394 N.E.2d 931 (1979). As the Indiana appellate courts note, "This does not mean that the wrongful conduct of the driver must be motivated by malice, ill will or intent to injure." *Cheek v. Hamlin*, 150 Ind.App. 681, 277 N.E.2d 620 (1972) [quoting *Mazza v. Kelly*, 147 Ind.App. 33, 258 N.E.2d 171 (1970)]. Rather, it is sufficient that the appellee has been "motivated by a desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of his guests." *Clouse v. Peden*, 243 Ind. 390, 186 N.E.2d 1, 4 (1962) [quoting Judge Achon's concurring opinion in *Brown v. Saucerman*, 237 Ind. at 619]. *See also Fuller v. Wiles*, 151 Ind.App. 417, 280 N.E.2d 59, 62 (1972).

The district court relied on the Indiana rule that "intoxication of a driver by itself is usually not evidence of 'wanton and wilful misconduct' within the meaning of the guest statute."[7] *Keck v. Kerbs*, Ind. App., 395 N.E.2d 845, 849 (1979). But as the Indiana Supreme Court pointed out in *Andert, supra*,

[I]ntoxication, combined with evidence of other misconduct, such as speeding, driving on the wrong side of the road or violating other traffic regulations, heightens the inference of wilfullness or wantonness that may be drawn from such circumstances . . . .

394 N.E.2d at 934. Sharp has alleged enough evidence of other misconduct that, when combined with the fact that Egler had been drinking before leaving the party, a jury could reasonably infer wanton or wilful misconduct on the part of Egler.[8]

That evidence includes the following facts: Egler by his own admission was familiar with the route he was traveling that night; the car was traveling 35 to 40 miles per hour, according to him; the road was straight, level, and clearly marked; there were no obstructions to vision; and Egler had to drive off the road some distance to reach the tree he struck. These facts are similar to the facts found in *Keck v. Kerbs, supra*. In that case, an Indiana court of appeals reversed a circuit court's dismissal of a guest statute case. The court said,

> [T]he evidence presented in the case at bar show a combination of factors possibly indicating wanton or wilful misconduct: consumption of alcohol shortly before the accident; underage drinking; excessive speed; familiarity with the blind section of the road; the short distance of approximately a mile between the Keck residence and the store; the guilty plea to driving while under the influence; and the police officers' observations. 395 N.E.2d at 850.

There is further probative evidence from the accident and the resulting injuries. In *Morgan v. Reneer*, 148 Ind.App. 90, 264 N.E.2d 71 (1971), an Indiana court wrote in a similar guest statute case,

---

7. While we believe that drunk driving is so serious and dangerous an offense that it should amount to gross negligence, or wanton or wilful misconduct, we must accept the Indiana rule as it is.

8. The rule in Indiana is that

the question as to whether the accident was caused by wanton or wilful misconduct of the

defendant should be left to the jury in all cases where there is any conflict in the evidence or where different inferences from the testimony given [regarding the essential facts] might be reasonably drawn.

*Clouse v. Peden*, 243 Ind. 390, 186 N.E.2d 1, 5 (1972) [quoting *Pierce v. Clemens*, 113 Ind.App. 65, 46 N.E.2d 836, 839 (1943)].

The extent of damage to the respective vehicles was evidence as to speed of appellant's automobile and also evidence of appellant's failing to keep a reasonable lookout and failing to have his automobile under reasonable control, such evidence and the inferences that a jury might reasonably draw therefrom are proper matters for the jury to consider in determining the acts of wanton misconduct as charged in appellee's complaint.

264 N.E.2d at 74. In the case at bar, there was a head-on collision with an immobile object, which only resulted after Egler had to drive the car off the road some distance and sideswipe a utility pole. Both parties were pinned inside the car and sustained severe injuries, from which Sharp continues to suffer.

All of these facts could lead a jury reasonably to find all three elements required to show wanton misconduct: first, that the driver was "conscious of his misconduct;" second, that he was "motivated by a desire to assert his interest above or beyond, or in reckless indifference for, the safety of his guests;" and third, that he did so "knowing that his conduct subjects them to a high degree of injury."[9] Clouse v. Peden, 243 Ind. 390, 186 N.E.2d 1, 4 (1962).

## IV

■ The district court also ruled that Hanka Auto Sales would not be liable for the acts of Egler, since he was not acting within the scope of his employment at the time of the accident. Indiana courts require that an employee involved in an accident must have been operating his car within the scope of his employment before his employer can be held liable under respondeat superior. Gibbs v. Miller, 152 Ind.App. 326, 329, 283 N.E.2d 592, 594 (1972). Sharp argues that there was enough evidence that Egler was acting within the scope of his employment to make the issue a factual one to be determined at trial. Egler was em-

ployed as a used-car salesman by Hanka Auto Sales, which did business as Clarksville Auto Mart, and the company owned the car Egler was driving the night of the accident. The car had on its back a small "Clarksville Auto Mart" sticker. The car was a used car, called a demonstrator, and Egler was allowed to drive it as such, but it showed no exterior sign it was for sale. Egler testified at his deposition that the company gave their salesmen cars for their own personal driving, until they were ready to be put on the lot. He said, "That's how we advertise our cars by driving it [sic], and we normally drive a fairly flashy car and it drew attention."

■ A central factor set out by Indiana courts for determining whether the servant was acting within the scope of his employment is whether the servant was "actuated to an appreciable extent by the purpose to serve the master." Gibbs, supra, 152 Ind.App. at 330, 283 N.E.2d at 595. In North Side Chevrolet, Inc. v. Clark, 107 Ind.App. 592, 25 N.E.2d 1011 (1940), a used-car salesman who was driving a demonstrator became involved in an accident. At the time of the accident the employee was using the car to reach a friend's home where he intended to spend the evening. The court held there that the drive was purely personal and in no way could be characterized as having been motivated by a purpose to serve the master. The similarity of North Side to the present case is obvious. Egler was using the car for his own purposes and was not attempting to sell or advertise the car for Hanka Auto Sales. In Indiana, it is not necessary that an employee's use of a car be exclusively for his employer's ends in order for that use to fall within the scope of his employment,[10] but the mere placing of an ordinary dealer sticker on the back of the car did not amount to a sufficient benefit to the employer to make a drive home at 4:00 a. m. one within the scope of Egler's employ-

---

**9.** In Sausaman v. Leininger, 237 Ind. 508, 146 N.E.2d 414 (1957), the Indiana Supreme Court said that the knowledge of the probability of injury is to be "measured by the standard with which reasonable men of ordinary intelligence are chargeable under the circumstances."

**10.** Great American Tea Co. v. Van Buren, 218 Ind. 462, 467, 33 N.E.2d 580, 581 (1941).

ment. All cars have such dealer stickers, and the public had no way of knowing the car was for sale.[11] The district court was therefore correct in refusing to impose any vicarious liability on Egler's employer.

We remand this case to the district court for further proceedings consistent with this opinion.

Reversed And Remanded.

---

11. The district court held,

[A]lthough the advertising theory has appeal, Sharp has not come forward with proof of these allegations. There was no advertising on the TransAm, or on any of the Hanka cars Egler used, other than the normal Clarksville Auto Mart sticker on the back of the car. Anyone stopped behind Egler at a stoplight could have discovered that a demonstrator had come from Hanka's, but would not realize that the car was for sale unless he knew Egler was a Hanka salesman who was allowed to drive the unsold car.

Entry of District Court, dated October 22, 1980, p. 6.