**John C. THRAPP, As Personal Representative and Special Administrator for Decedent, Jerry Middleton, Appellee (Plaintiff Below),**

v.

**Donald AUSTIN, Appellant (Defendant Below). [*sic*]**

No. 3–1081A251.

Court of Appeals of Indiana, Third District.

June 28, 1982.

Robert E. Kabisch, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellant.

Mark S. Pantello, Ronald L. Sowers, Sowers & Benson, Fort Wayne, for appellee.

STATON, Judge.

Donald Austin and Jerry Middleton were occupants of a brand new 1978 four-door Chevrolet Caprice when the car crashed through a guard rail, dropped eighteen feet, and landed upside down in a ditch. Middleton subsequently died from the effects of hypothermia after he was removed from the wrecked auto by rescue personnel.

John C. Thrapp, as personal representative and special administrator for Middleton, brought a wrongful death action against Austin. The jury found in favor of Thrapp and against Austin. It awarded Thrapp $149,000.00 and costs.

On appeal, Austin raises the following issues:[1]

(1) Did the trial court err when it did not grant Austin's motion for summary judgment on the issue of whether Middleton was a "guest" under the Indiana Guest Statute?

(2) Did the trial court err when it did not grant Austin's motions for judgment on the evidence?

(3) Did the trial court err in giving Thrapp's tendered instruction No. 6?

(4) Did the trial court err in giving Thrapp's tendered instruction No. 9?

We affirm.

## I.

### Summary Judgment

Austin and Middleton were members of the same American Legion Post. Middleton was the present commander of the post. Austin, a past commander, was one of the volunteer bartenders who served without pay on Friday and Saturday nights. Jack Dickey regularly attended the Legion functions and used its facilities although he was unsure if he was an official member of the post.

On February 10, 1978, Dickey drank beer and shot pool at the Legion. While Austin was closing the bar at approximately 2:00 or 2:30 a. m., he and Middleton decided that Dickey was too intoxicated to drive himself home. They offered him a ride home and successfully delivered him at his house in the country. On their way back into town, the automobile crashed through a guard rail and landed upside down in a ditch. Thrapp contended that Austin was driving the auto when it crashed. Austin contended it was unknown who was the driver.

Prior to trial, Austin moved for

"partial summary judgment as to the relationship between plaintiff's decedent, Jerry Middleton, and the defendant, Donald Austin, and for a determination that if said Jerry Middleton was a passenger at the time of the accident out of which plaintiff's Complaint arises, then he was a guest being transported without payment therefor and subject to the provisions of I.C. 9–3–3–1, the Indiana Guest Act. . . ."

The trial court took this motion under advisement. At the conclusion of plaintiff's evidence, the trial court denied the motion for a partial summary judgment.

On appeal, Austin argues that the trial court confused and misled the jury and

---

1. The issues have been combined and reworded.

unfairly prejudiced his case when it failed to resolve a question of law (the relationship of Austin and Middleton) rather than grant his motion for partial summary judgment. Austin argues that the jury was forced to decide this question of law based upon a series of complex jury instructions. He argues that this prejudiced his rights to a verdict based upon proper conclusions of law. Austin argues that the trial court committed reversible error when it denied his partial motion for summary judgment.

The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual dispute and which may be determined as a matter of law. This procedure is an aid in eliminating undue burdens upon litigants and exposing spurious causes. However, the summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized; mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant. *Bassett v. Glock* (1977), Ind.App., 368 N.E.2d 18, 20–21.

The summary judgment procedure is an application of the law to the facts when no factual dispute exists. The party seeking the summary judgment therefore has the burden to establish that there is no genuine issue as to any material fact. Any doubt as to fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184.

█ A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Lee v. Weston* (1980), Ind. App., 402 N.E.2d 23, 24. The factual issue is genuine if it can not be foreclosed by reference to undisputed facts. That is, a factual issue is genuine if those matters properly considered under TR. 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' differing versions. *Stuteville v. Downing* (1979), Ind. App., 391 N.E.2d 629, 631.

█ Whether the Indiana Guest Statute was applicable to the lawsuit depended upon who was driving the car. If the jury, as finder of fact, determined that Middleton was driving the automobile when it crashed, the Guest Statute could not apply. Determining whether Middleton or Austin was driving is a determination of material fact because if Middleton was driving, Austin could not be found liable as a result of his conduct while driving; one theory of recovery is foreclosed. The trial court did not err when it denied Austin's motion for partial summary judgment.

█ If Austin wished to have the jury instructed that if Austin was found to be the driver of the auto when it crashed then the relationship between him and Middleton was a guest relationship, Austin should have tendered such an instruction to the trial court pursuant to Ind. Rules of Procedure, Trial Rule 51. He did not tender such an instruction. In fact, the record reveals that Austin's own tendered instructions as well as Thrapp's tendered instructions were combined to form the final instructions regarding the relationship of Austin and Middleton. Austin can not be heard to complain about the instructions when he did not tender different instructions nor object to Thrapp's tendered instructions.

## II.

### Judgment on Evidence

At the close of the plaintiff's evidence and the close of the defendant's evidence, Austin moved for a judgment on the evidence. The trial court overruled his motion both times. He argues that the trial court committed reversible error.

█ Austin waived any error that may have occurred when the trial court denied his motion at the close of the plaintiff's case-in-chief because he continued with the evidence and presented his case-in-chief. *American Optical Co. v. Weidenhamer* (1980), Ind.App., 404 N.E.2d 606, 619. However, he has preserved his second motion made at the close of all the evidence for appeal.

When considering a motion for judgment on all the evidence offered, the trial court must consider only the evidence most favorable to the non-moving party. The motion may be granted only if there is no substantial evidence or reasonable inferences to be adduced therefrom to support an essential element of the claim. *Keck v. Kerbs* (1979), Ind.App., 395 N.E.2d 845, 846.

█ Austin argues that his motion for judgment on the evidence should have been granted because there was no evidence from which a reasonable inference could be drawn that he was the driver of the automobile at the time of the accident. We disagree.

The evidence in the light most favorable to Thrapp, the non-moving party, is as follows: Jack Dickey testified that he, Austin, and Middleton left the Legion Post in Austin's auto.[2] Austin was driving and Middleton was in the front passenger's seat. Dickey directed Austin on the route to his country home. The auto kept drifting off both sides of the road. It did not go far off the road because Middleton always called Austin's attention to the situation. Middleton wanted to drive. He and Austin discussed who would drive quite frequently—almost continuously—from the time they left the Legion Post until they arrived at Dickey's house. Dickey stated that Middleton's personality was such that Middleton never displayed any anger or immediacy about the situation; rather, he constantly encouraged Austin to let him drive. He finally reached some sort of agreement that at Dickey's house they would change drivers; however, as soon as Dickey exited the auto, the auto immediately began to back up without Austin and Middleton changing places.

No one saw who was driving the auto between the time it left Dickey's house and the time it was in the accident. Austin testified that he suffered a loss of memory regarding this time frame.

The evidence is sufficient for the reasonable inference to be made that Austin was driving the demonstrator automobile assigned to him at the time of the accident. It was reasonable to assume that if a change of drivers was to be made it would have taken place when the auto was stopped for Dickey to exit.[3] Such a change did not happen.[4]

█ Austin also argues that no evidence existed from which it could reasonably be inferred that he was guilty of any wanton or willful misconduct. He argues that evidence of intoxication while driving is not evidence of wanton or willful misconduct and he cites *Andert v. Fuchs* (1979), Ind., 394 N.E.2d 931. A more complete reading of *Andert* reveals that intoxication, combined with evidence of other misconduct, such as speeding, driving on the wrong side of the road, or violating other traffic regulations, heightens the inference of willfulness or wantonness that may be drawn from such circumstances.

Austin's blood/alcohol content at 9:22 a.m. on February 11, 1978 was .18%. Dr. Robert Forney, the head of the Indiana University Department of Toxicology, testified that assuming the accident had happened four hours earlier and that Austin had stopped drinking at 2:30 a.m. his blood/alcohol content would have been at least .22% and as high as .30%. While driving to Dickey's house, Austin kept letting the car drift off both sides of the road. Middleton kept pointing this out and asking Austin to let him drive. Dickey testified that he did not fall asleep in the back seat because he was "scared to."

---

**2.** Austin was the service manager at a Chevrolet dealership. A demonstrator was assigned to him for his personal use.

**3.** The accident occurred shortly after the "Blizzard of 1978." The roads were cleared just to the berm of the road. It was quite cold.

**4.** Austin attempts to argue that where Middleton was found by rescue personnel is indicative of who was driving the auto. Assuming Austin's reasoning is correct, the evidence conflicts as to where Middleton was when he was found; therefore the evidence in the light most favorable to the non-moving party is that Austin was driving the auto.

Wanton or willful misconduct requires that the host-driver to be: (1) conscious of his misconduct; (2) motivated by reckless indifference for the safety of his guest; and (3) to know his conduct subjects his guests to a probability of injury. *Keck, supra,* 395 N.E.2d at 848; *Barrow v. Talbott* (1981), Ind.App., 417 N.E.2d 917, 920. The trial court should also apply the following guidelines: a) An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or willful misconduct. b) The host must have manifested an attitude adverse to the guest, or of perverseness, in that the host must have been shown he was indifferent to the consequences of his conduct. c) The entire course of conduct of the host leading up to the accident must be considered. d) The host must have had actual knowledge of danger confronting the guest. *Keck, supra* 395 N.E.2d at 848.

The requisite knowledge or consciousness may be obtained through the use of the driver's faculties as well as from information conveyed to the driver in the nature of warnings by others. *Keck, supra.* The mental element of reckless indifference is commonly shown by the host-driver's disregard of his passenger's complaints or warnings about his driving. *Barrow, supra,* 417 N.E.2d at 920–921. Finally, if circumstances are such that reasonable men would know and conclude that their conduct entailed a probability of injury, then the host is chargeable with the knowledge that his conduct subjects his guests to a probability of injury.

The evidence shows a combination of factors possibly indicating wanton or willful misconduct: drifting off both sides of the road several times; high blood/alcohol content; passengers pointing out the driving errors; passengers constantly wanting to change drivers. It could reasonably be inferred that Austin was falling asleep at the wheel and refused to change drivers despite constant suggestions that he should let someone else drive.

Austin also argues that there was insufficient evidence to find that Middleton was a fare-paying passenger of Austin. Such a determination was not necessary and need not be discussed since sufficient evidence existed to find Austin committed wanton or willful misconduct. *American Optical, supra* 404 N.E.2d at 619.

### III. and IV.
### Instructions

Austin has failed to preserve any alleged error regarding the trial court's final instructions because he has not complied with Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). *Spaulding v. State* (1978), 268 Ind. 23, 373 N.E.2d 165, 167. AP. 8.3(A)(7) states in part:

> "When error is predicated on the giving or refusing of any instruction, *the instruction shall be set out verbatim* in the argument section of the brief *with the verbatim objections,* if any, made thereto. *Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."* (Emphasis added.).

Austin failed to set out verbatim his objections to both instructions. He failed to set out verbatim one of the instructions. He also apparently [5] attempts to raise additional objections to an instruction that were not raised to the trial court. These additional objections can not be considered for the first time on appeal. *Scott v. Krueger* (1972), 151 Ind.App. 479, 280 N.E.2d 336, 345. Austin has failed to comply with the trial rules and appellate rules; the error, if any, is deemed waived.

Judgment affirmed.

HOFFMAN, P. J., and GARRARD, J., concur.

---

5. Thrapp generally lists several objections Austin did not make at trial and points out they are waived. Austin does not disagree that the objections were not specifically stated below. He argues that this omission should be overlooked due to various circumstances.